IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEO B. BUYER, | ) | CASE NO. 3:11 CV 658 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 405(g) by Leo B. Buyer seeking judicial review of a 2010 decision of the Commissioner of Social Security denying Buyer's application for disability insurance benefits (DIB) and supplemental security income (SSI).[2] After the Commissioner filed an answer[3] and the transcript of proceedings before the Administrative Law Judge (ALJ),[4] the parties briefed their positions,[5] and, in compliance

---

[1] The parties have consented to my exercise of jurisdiction (ECF # 9), and United States District Judge Jack Zouhary has ordered the matter transferred to me for further proceedings. ECF # 10.

[2] ECF # 1.

[3] ECF # 7.

[4] ECF # 8.

[5] ECF # 12 (Buyer's "statement of errors"); ECF # 15 (Buyer's brief on the merits); ECF # 18 (Commissioner's brief on the merits).

with my pretrial order,[6] submitted supporting charts[7] and fact sheets.[8] The parties participated in an oral argument.[9]

For the reasons that follow, I will find that the decision of the Commissioner is supported by substantial evidence and so will be affirmed.

## Facts

**A.   The decision of the ALJ**

The transcript shows that Buyer was 38 years old at the time of the hearing; has a high school education; and previously worked as a fork lift operator, farm worker, warehouse supervisor, and maintenance mechanic.[10] Claiming pain and other limitations arising from degenerative disc disease of the thoracic spine, Buyer testified that he has days when he feels "ok," but other days when he cannot do anything.[11] He testified that he can perform activities such as driving or sleeping for a few hours at a time due to pain and that the loss of grip strength in his left hand further restricts activities such as working on cars or doing dishes.[12]

---

[6] ECF # 14.

[7] ECF # 18, Attachment (Commissioner's chart).

[8] ECF # 13 (Buyer's fact sheet).

[9] ECF # 22.

[10] Transcript (Tr.) at 32-38.

[11] *Id*. at 15.

[12] *Id*.

After being treated by a chiropractor for lower thoracic pain, a magnetic resonance imaging (MRI) of the his lower spine in 2006 revealed that Buyer had degenerative disc disease.[13] Later that same year, Buyer had fusion surgery in 2006 from T7 to T12.[14] Although initial post-operative reports were good, Buyer shortly thereafter began to complain of thoracic back pain.[15] X-rays and physical examinations taken then showed "stable post-operative changes with no evidence of hardware failure," as well as normal gait and balance along with an ability to do fine manipulation with his hands.[16] Other follow-up examinations in the year after surgery disclosed no evidence of degenerative changes and no evidence of malalignment or hardware failure in the fused area.[17]

Notwithstanding these findings, Buyer continued to complain of severe and disabling back pain.[18] EMG studies, x-rays, and MRIs done at this time were determined by the ALJ to be "essentially normal."[19] Buyer was prescribed a narcotic pain reliever and a muscle relaxer, which he testified were not effective in controlling the pain.[20]

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 16-17.

[17] *Id.* at 17.

[18] *Id.*

[19] *Id.*

[20] *Id.*

An opinion given after Buyer's surgery by his orthopedic surgeon, Robert Crowell, M.D., states that Buyer could return to work, performing light and medium work activities that did not involve driving a truck.[21]

On this record, and after hearing in-person testimony from Buyer, the ALJ found that Buyer has a significant impairment as a result of thoracic kyphosis and degenerative disc disease.[22] However, the ALJ further found that Buyer did not meet or equal Listing § 1.04 for cervical, thoracic, or lumbar spine impairments.[23] He further found, after concluding that Buyer's complaints of pain were not fully credible,[24] and that the opinion of Dr. Crowell should be given great weight,[25] that Buyer had the residual functional capacity (RFC) to perform less than a full range of light work with the following specifics:[26]

> [Buyer] can lift and carry 10 pounds frequently and 20 pounds occasionally. He can sit, stand and walk for six hours at a time for a total of eight hours in an eight-hour workday and occasionally climb ladders, stoop, kneel, crouch and crawl. He cannot perform tasks requiring frequent torso twisting and no operation of motor vehicles at work.[27]

---

[21] *Id.* at 18.

[22] *Id.* at 13.

[23] *Id.* at 14.

[24] *Id.* at 16-17.

[25] *Id.* at 18.

[26] *Id.* at 14.

[27] *Id.* at 14.

Based on Buyer's vocational profile and the RFC, a vocational expert (VE) testified – and the ALJ so found – that Buyer could not perform any of his past relevant work.[28] But, the VE further testified that, given that same vocational profile and RFC, jobs existed in sufficient numbers within the national and regional economies that Buyer's could perform.[29]

Accordingly, the ALJ – whose decision became the decision of the Commissioner – concluded that Buyer was not disabled and so denied his applications for benefits.[30]

**B.      Issues on judicial review**

Buyer raises four issues on judicial review:

1. The ALJ's finding on Buyer's credibility is without merit.[31]

2. The ALJ erroneously applied the "sit and squirm" test.[32]

3. The ALJ erred in failing to have a medical expert at the hearing to provide testimony and improperly used his own lay opinion.[33]

4. The ALJ erred in eliciting testimony from the vocational expert with an incomplete hypothetical.[34]

---

[28] *Id.* at 19.

[29] *Id.* at 19-20.

[30] *Id.* at 20.

[31] ECF # 12 at 4.

[32] *Id.* at 6.

[33] *Id.* at 7.

[34] *Id.*

## Analysis

**A.     Standard of review – substantial evidence**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[35]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[36] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[37]

---

[35] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[36] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[37] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standard**

*1.     The ALJ properly assessed Buyer's credibility and did not utilize the "sit-squirm" test.*

Citing well-recognized Sixth Circuit case law that proscribes the use of the so-called "sit and squirm" test in evaluating a claimant's credibility as to pain,[38] Buyer contends that the ALJ here improperly relied upon such observations of Buyer's demeanor at the hearing to conclude that Buyer was not credible in his assertions of pain.[39] He asserts that he is "never comfortable" due to pain and would have liked to move around during the hearing, but held himself together and did not.[40]

The Commissioner, for his part, asserts that the basis for the ALJ's finding on credibility was that "[Buyer's] allegations of disabling limitations were inconsistent with Dr. Crowell's opinion" that was relied on to formulate the RFC.[41] The Commissioner accepts that Buyer's demeanor at the hearing could not, of itself, be used to prove that Buyer's allegations were not credible, but argues that the decision in this case rested on the treating

---

[38] *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310 (6th Cir. 1983).

[39] ECF # 12 at 6 -7.

[40] *Id.* at 6.

[41] ECF # 18 at 7.

notes by Buyer's treating physician and other objective medical evidence, which collectively established that Buyer was not limited by pain.[42]

Specifically, the ALJ engaged in a three-prong review of (1) objective medical evidence, (2) opinion evidence from the treating physician, and (3) inconsistencies in the record to arrive at the conclusion that Buyer's claims of pain were not fully credible.

First, as to the objective medical evidence, the ALJ made the following findings:

- Since the surgery Buyer has had "only conservative care," including a pain reliever, a muscle relaxer and some physical therapy, but not any injections or recommendations for further surgery.[43]

- EMG nerve conductivity studies were normal, as were post-operative x-rays, and MRIs.[44]

- Despite Buyer's contention that pain medication is ineffective, he remains on that medication with no prescription for anything stronger.[45]

On the basis of the foregoing facts, which were set forth in the opinion, the ALJ found that "the totality of the medical evidence supports that the claimant's pain is mostly controlled."[46]

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

Next, the ALJ noted the opinion of Dr. Crowell, given in April, 2007, that Buyer could return to work and perform light and medium work that did not involve truck driving.[47] The ALJ further noted that the state agency opinion, while not accepted, was consistent in its finding that Buyer was not disabled and was capable of performing medium work.[48]

In the third area of inconsistencies in the record, the ALJ took note, as has been stated, that although stronger pain medication exists, there is no evidence that Buyer asked for any stronger pain medication and no record that anything stronger had been prescribed.[49]

It was only after engaging in this detailed analysis of three distinct areas of the record that the ALJ made his observation about Buyer's behavior at the hearing. It is worthy of special note – given Buyer's argument here – that the ALJ particularly stated that his observation concerning Buyer's actions "alone cannot be used to determine precisely whether a person does or does not have pain."[50] Indeed, the ALJ continued, such an observation, when considered in conjunction with the totality of the evidence, "does not bolster his credibility."[51] As such, it is apparent that the ALJ's observation as to Buyer's demeanor is clearly not a principle basis for the credibility finding, but merely an ancillary opinion included at the end of the substantive analysis.

---

[47] *Id.* at 18.

[48] *Id.*

[49] *Id.* Buyer disputes whether the pain is controlled and whether the record shows the unsuccessful use of other medications. *See*, ECF # 12 at 5.

[50] Tr. at 18.

[51] *Id.*

Apart from the sit-squirm argument, Buyer asserts that the ALJ's treatment of his pain complaint was incomplete.[52] In particular, he asserts that the ALJ did not reference testimony that Buyer takes numerous breaks in his daily activities due to pain and needs to use a heating pad several times a day while lying down for the same reason.[53]

In *Cross v. Commissioner of Social Security*,[54] I have previously set out the law applicable to judicial review of an ALJ's credibility determination, which I here incorporate by reference. As I noted there, the weight of the objective medical evidence remains a critical factor. Evaluation of factors like daily activities, aggravating or precipitating factors, side effects from medication and other, non-medical treatments, are particularly relevant when the degree of severity of the underlying impairment is "not susceptible to proof by objective medical evidence."[55] In that case, the ALJ enjoys "extremely broad" discretion in evaluating the evidence, and any decision on credibility must contain "specific reasons" for the finding, supported by evidence in the record, and be sufficiently clear for subsequent review.[56]

Applying that standard in this case, I note first that the ALJ's decision is primarily based on objective medical evidence and then on medical opinions that rest on that evidence. As such, under the analytic framework discussed in *Cross*, this type of evidence, if available,

---

[52] ECF # 12 at 5.

[53] *Id.* at 5-6.

[54] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724 (N.D. Ohio 2005).

[55] *Id.* at 732.

[56] *Id.* at 732-33 (citations omitted).

should predominate over secondary factors such as daily activities or use of non-medical treatments.

That is precisely what occurred here. The ALJ's credibility decision rests first on the objective medical evidence of normal post-operative nerve studies, MRIs, and x-rays. Next, the decision is based on opinions from a treating physician and state agency physicians that state Buyer can do a full day of less than light work. Only after these grounds are set forth does the ALJ consider things like daily activities.

Accordingly, I find that the ALJ employed a meticulous, multi-phased analysis of the evidence, recounted above and consistent with the scheme in *Cross*, that did not ground this finding as to credibility on an impermissible use of the sit-squirm test. Further, contrary to the allegation that the assessment was "incomplete,"[57] I find that the ALJ correctly based his conclusion on clearly articulated, fully reviewable reasons founded on evidence of record – clinical, opinion, and circumstantial – that the ALJ determined undercut Buyer's claim of disabling pain. Therefore, for the reasons given, I find that the Commissioner's decision in this regard is supported by substantial evidence and is thus affirmed.

### *2.    It was no error to not call on a medical expert.*

Buyer essentially argues that the ALJ should have called a medical expert to explain the significance of a "mild denervation to the paraspinals on the left" that was disclosed by a post-operative MRI.[58] Buyer maintains that because there was no direct evidence that

---

[57] ECF # 12 at 5.

[58] ECF # 12 at 7.

Dr. Crowell had considered Buyer's pain in formulating his RFC, the ALJ improperly relied on that opinion rather than calling in a medical expert to discuss the MRI.[59]

I note first that Dr. Crowell's treatment notes of February 28, 2007 – where he first states his RFC finding that Buyer can return to work but with limitations[60] – contain an explicit notation that six months after the surgery Buyer has "had a dramatic improvement in his pain overall."[61] Specifically, Dr. Crowell noted that although Buyer reported having "occasional painful days," Buyer was "anxious to return to work."[62]

I also observe that Dr. Crowell's notes from an examination on April 4, 2007 – when Dr. Crowell restated his RFC finding that Buyer could "pursue light to medium duty" work – contained a relatively lengthy report that Buyer claimed to have "persistent" back pain; that Buyer denied any "new" pain; and that he also denied any lower extremity pain.[63]

Thus, any suggestion here that Dr. Crowell did not even address the issue of pain at the time he made his RFC findings – and that this failure meant the ALJ needed the assistance of a medical expert to properly formulate an RFC that considered pain – is not factually supported by the record.

---

[59] *Id.*

[60] Tr. at 335 (Dr. Crowell's notes of 02/28/07); Tr. at 337 (Dr. Crowell's notes of 04/09/07).

[61] Tr. at 335.

[62] *Id.*

[63] Tr. at 337.

Accordingly, for the reasons stated, I find that there was no need for the testimony of a medical examiner prior to the ALJ relying on the RFC opinion of Buyer's treating physician, Dr. Crowell, whose RFC opinion was made with full, stated awareness of the issue of pain. As such, I find that the Commissioner's RFC finding is supported by substantial evidence.

3. ***The question to the VE was proper, and so the testimony it elicited is substantial evidence in support of the determination that a significant number of jobs are available to Buyer.***

Buyer's argument here is premised on his prior contention that the RFC findings were made without considering the effects of pain. However, as noted above, since the RFC was supported by the twice-stated opinion of Buyer's treating physician who gave those opinions with full knowledge of Buyer's complaints of pain, I find that the questions posed to the VE based on the RFC were proper and thus did not yield tainted conclusions. Buyer's assertion here is without merit.

## Conclusion

For the foregoing reasons, I find that the decision of the Commissioner in this matter is supported by substantial evidence and is, therefore, affirmed.

IT IS SO ORDERED.

Dated:  September 27, 2012                          s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge